Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4988 | **DATE** | 1/22/2001 |
| **CASE TITLE** | U.S.A. vs. Krishnaswami Sriram, M.D. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   **ENTER MEMORANDUM OPINION AND ORDER.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 2 3 2001 | |
| | Notified counsel by telephone. | | date docketed | 37 |
| | Docketing to mail notices. | | CM | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/22/2001 | |
| | | | date mailed notice | |
| | courtroom JJK deputy's initials | '01 JAN 22 PM 3: 25 | JJK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | JAN 2 3 2001 |
| | ) | No. 00 C 4988 |
| vs. | ) | |
| | ) | Magistrate Judge Schenkier |
| KRISHNASWAMI SRIRAM, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Government has filed this civil action seeking injunctive relief and damages based on its assertion that the defendant, Krishnaswami Sriram ("Dr. Sriram") has submitted numerous false and fraudulent claims for reimbursement for Medicare services. On August 17, 2000, the district judge entered a temporary restraining order that, among other things, froze the following assets: (a) a certificate of deposit in excess of $3 million held in Account Number 700017538 at the Lake Forest Bank & Trust; (b) real estate and improvements located at 611 Hunter Lane in Lake Forest, Illinois; and (c) real estate and improvements located at 715 East Falcon Drive in Arlington Heights, Illinois. The matter presently is before the Court on the Government's request for a preliminary injunction maintaining the freeze on those assets.

This civil action proceeds against the backdrop of a parallel criminal proceeding by the Government against Dr. Sriram, in which an indictment alleges that by his Medicare activities, Dr. Sriram has committed mail fraud in violation of 18 U.S.C. § 1341 and health care fraud in violation of 18 U.S.C. § 1347. In that indictment, the Government also seeks forfeiture of assets, including the three assets described above that are the subject of the preliminary injunction hearing.

37

Shortly before the preliminary injunction hearing, which commenced on January 16, 2001, the Government indicated its intention to call as a witness Dr. Sriram's wife. The Government indicated that it wished to ask Ms. Sriram questions touching on five different categories: (a) matters relating to her involvement in Sriram's ongoing medical business; (b) her knowledge of sources of family income other than Medicare payments; (c) the source of deposits into the various bank accounts at Lake Forest Bank; (d) the source of payments to pay off the mortgages on the properties in Lake Forest and Arlington Heights; and (e) the source of money used for deposits into Lake Forest Account Number 7000017538. The Government indicated that it had not provided, and would not provide, any assurance that Ms. Sriram's testimony or its fruits would not be used in the criminal proceeding against Dr. Sriram. Nor did the Government disavow the possibility that Ms. Sriram herself might be a target of the criminal investigation.

The defense indicated that Ms. Sriram intended to assert the spousal testimonial privilege. The Government asserted that none of the testimony it seeks from Ms. Sriram would be adverse to Dr. Sriram – although, if so, one might wonder why the Government seeks to offer it. On January 16, 2001, during the taking of evidence at the preliminary injunction hearing, the Court delivered an oral ruling holding that the marital communication privilege applies to this proceeding, and that the propriety of any assertions of that privilege by Ms. Sriram would be considered on a question by question basis. In this opinion, the Court sets forth the reasoning underlying that ruling.

I.

Unlike the marital communications privilege, which confers a privilege upon both spouses against testifying about any confidential communications, the spousal privilege allows the testifying spouse to assert a privilege against providing adverse testimony against the other spouse. *See*

*generally* C. MUELLER, L. KIRKPATRICK, FEDERAL EVIDENCE § 2.06, at 425 (2d Ed. 1994). In order to ascertain the metes and bounds of this privilege, and thus to determine its applicability here, we begin with a discussion of the "medieval origins" of the spousal testimonial privilege. *Trammel v. United States*, 445 U.S. 40, 44 (1980).

Although part of our common law heritage, the spousal testimonial privilege has its genesis in two rules that are antithetical to our modern culture: "First, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one." *Trammel*, 445 U.S. at 44. Taken together, those rules led to the doctrine that since the husband could not testify in his own proceeding, neither could his wife. *Id.*

Over the past 70 years, this absolute privilege has been twice eroded. In *Funk v. United States*, 290 U.S. 371, 377-78 (1933), the Supreme Court limited the spousal testimonial privilege so as to permit a spouse to give testimony in a defendant's behalf, but to continue to allow either spouse to prevent the other from giving adverse testimony. Thereafter, in *Trammel*, the Supreme Court held that the defendant-spouse could not prevent the testifying spouse from giving adverse testimony, and that the right to exercise the privilege is vested solely in the testifying spouse. 445 U.S. at 53. The analysis employed by the Supreme Court in reaching that conclusion is instructive here.

The *Trammel* court recounted the substantial costs exacted by this privilege. Like all privileges, the spousal testimony privilege is at tension with the "fundamental principle that 'the public . . . has a right to every man's evidence.'" *Trammel*, 445 U.S. at 50. Moreover, the costs

3

exacted are more extreme than is true with other privileges because the spousal testimonial privilege sweeps more broadly than any other privilege: it is not limited merely to confidential communications, but extends to anything one spouse may have said to another in circumstances where there could be no reasonable expectation of confidentiality. *Id.* at 51. Thus, the privilege seeks "not to exclude private marital communications, but rather to exclude evidence of criminal acts and of communications made in the presence of third persons." *Id.* Moreover, the Court observed that these costs are exacted by a privilege that is based on an "archaic" and "demean[ing]" view of women that has disappeared in modern society. *Id.* at 52. The Court further noted that the trend among the states was to abolish or limit the privilege. *Id.* at 48 n.9.

The only modern justification that the Supreme Court found for this ancient privilege is "its perceived role in fostering the harmony and sanctity of the marriage relationship." 445 U.S. at 44. However, the Court found that interest to be of significant force, given that family relationships "already are subject to much erosion in our day." *Id.* at 48. The Court then balanced this justification against the substantial and widespread criticisms of the spousal testimonial privilege and, while not finding that the privilege should be abrogated entirely, limited its applicability.

## II.

Against this backdrop, the Court considers whether Ms. Sriram may assert the privilege in this case. The cases addressing the privilege typically arise in the context of criminal proceedings. The issue before the Court here is the propriety of a preliminary injunction freezing assets under 18 U.S.C. § 1345. Although that provision is located in the title covering criminal laws, by the express terms of the statute an action brought under Section 1345 is a "civil proceeding." Thus, at the threshold, the Court must confront the question of whether the privilege applies to a civil proceeding.

In *Ryan v. Commissioner,* 568 F.2d 531, 544 (7th Cir. 1977), a case that preceded *Trammel* by three years, the Seventh Circuit discussed but did not decide the question. The Court acknowledged that "an argument can be made that no policy supports the distinction between allowing the privilege against adverse spousal testimony in criminal cases but not in civil cases." *Id.* However, the Seventh Circuit also noted that a case could be made that the modern rationale for the privilege – the prevention of marital discord – is more weighty in a criminal than a civil matter, "because it encourages the preservation of a marriage that might assist the defendant spouse in his or her rehabilitation efforts." *Id.* Because independent grounds existed for the Court's decision upholding a tax court refusal to allow assertion of the privilege, the Seventh Circuit found it unnecessary to "fully defend the civil-criminal distinction" and to limit the privilege to instances "where a spouse who is neither a victim nor participant observes evidence of the other spouse's crime." *Id.*

In *United States v. Yerardi,* 192 F.3d 14, 19 (1st Cir. 1999), the court commented that while some cases assume the privilege may be asserted only in criminal proceedings, "it is hard to find a square holding to this effect." However, the *Yerardi* court suggested that it would draw precisely that distinction in the appropriate case. The court hypothesized that the testifying spouse "could readily be called by the plaintiff in a civil damage action to establish that [the defendant spouse's] negligence had caused a traffic accident in which the plaintiff was injured, and [the testifying spouse] could not ordinarily assert the privilege in such a case even though her testimony might lead to a large damage award against [the defendant spouse]." *Id.* at 20. But in that case, too, the court found it unnecessary to resolve the issue, since there the civil proceeding was "ancillary to a criminal case

5

and seeks to recover a penalty under criminal forfeiture provisions," and in addition, "raises an appreciable risk of contributing to future criminal prosecution of" of the spouse defendant. *Id.* at 19.

This Court doubts that adverse testimony by a spouse ever would be likely to promote a harmonious marital relationship – whether that testimony came in a criminal case, or (as here) a civil case in which the defendant spouse is being pursued for millions of dollars in damages. In that respect, it is difficult to say that the privilege would serve the interest of avoiding marital discord in criminal cases but not in civil cases. However, the Court must balance that interest against the costs of the privilege, which *Trammel* explained are substantial, and the fact that the history of this privilege over the past 70 years shows that the trend has been to restrict rather than expanded it. Balancing these factors, the Court finds that the spousal testimonial privilege would not apply to adverse testimony given by a spouse in a civil proceeding that is untethered to a criminal proceeding.

However, this is not such an "untethered" civil proceeding. Like *Yerardi*, this case is plainly connected to the pending criminal prosecution. The Government has not represented, and declines to represent, that the fruits of Ms. Sriram's testimony – if adverse to Mr. Sriram – will not be used in the criminal proceeding. In *Yerardi*, the court explained that the Government could overcome the spousal testimonial privilege by making a binding commitment not to use the testimony directly or indirectly in criminal proceedings against the other spouse. *Id.* at 20-21. And, in *Ryan*, the Seventh Circuit found it significant that the spousal testimony being sought could not be used against the defendant spouse, because the Government had provided a grant of use immunity barring the use of information obtained in any subsequent criminal proceeding. 568 F.2d at 543. *See also* MUELLER AND KIRKPATRICK, FEDERAL EVIDENCE § 206, at 429 and n.24 ("It seems too that a grant of

immunity to the spouse, and perhaps even an agreement not to use the testimony of the privilege claimant, may suffice as a basis to overrule the privilege claim").

The Government here has not provided such immunity or assurance, and thus we are faced with a situation similar to that confronted in *Yerardi*. Given the Supreme Court's criticisms of the spousal testimonial privilege in *Trammel*, the day may come when that privilege is abolished altogether. However, the Supreme Court's most recent pronouncement indicates that day has not yet arrived, and on the facts before the Court, we find that the spousal testimonial privilege may be asserted in this case.

That leaves the question of whether the testimony the Government seeks to elicit from Ms. Sriram would be adverse. As the Court has explained above, the reason the privilege applies in this case is because of the potential use of adverse testimony obtained by the Government here in the related criminal case. Thus, the touchstone for whether the testimony sought from Ms. Sriram is "adverse" will not be whether it might assist the government in this civil proceeding, but instead, whether the testimony might be used adversely by the Government in the pending criminal proceeding. Consistent with the prevailing case law, the Court will determine the applicability of the privilege on a question by question basis. *Yerardi*, 192 F.3d at 21.

**ENTER:**

*[signature]*
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

Dated: January 22, 2001